# UNITED STATES

*v.*

# PEDRO PEREZ LOPEZ.

San Juan, Criminal, No. 1115.

ON MOTION TO DISMISS FOR LACK OF JURISDICTION. ON OBJECTION TO EXPERT TESTIMONY.

Federal Court—Jurisdictional Limits.

1. The United States District Court for Porto Rico has jurisdiction over crimes committed upon the tract of land adjacent to the city walls formerly in military use. United States v. Hermandez, 2 Porto. Rico Fed. Rep. 81. The subsequent decision of Gromer v. Standard Dredging Co. 224 U. S. 362, controls only as to taxation.

Federal Practice—Expert Testimony.

2. Expert testimony does not extend to asking a witness whether he believes the testimony of other witnesses. Credibility is for the jury alone.

United States v. Lopez.

Opinion filed December 20, 1918.

---

*Miles M. Martin,* United States Attorney, and Jaime Sifre for the Government.

*H. R. Francis* for the defendant.

HAMILTON, Judge, delivered the following opinion:

1. Yesterday at the time of adjournment there was under consideration the very interesting point as to the jurisdiction of this court over the land where the alleged offense is supposed to have been committed, that is to say, the strip of land which begins at the end of Tetuan street and would be the continuation of Tetuan street if it was extended beyond the little chapel at that point, around the southern, western, and northern side of the Island, in other words, the city wall. That city wall formerly extended all around the city of San Juan, and in Spanish times it was thrown down at the point where we now hold court, and for some blocks east of this point. All this made up the fortification of San Juan.

At the time of the cession from Spain, the place where we now hold court might not have been part of the military reservation, that is to say, part of the fortified defenses, but certainly the point now in question, the end of Tetuan street, was at that time a part of the fortification of San Juan. It was military in every sense of the word, and this was true of the strip that goes all around the west side of the Island, including El Morro, and the north side up to San Geronimo, which I

XI. Porto Rico.—8.

have occasion to know is military and nothing else. It was all military in every sense of the word. At the time of the cession by the treaty of Paris, it all passed to the United States in a military condition and for military purposes, and was actively used by the United States until the act conferring civil government in 1900, and even then it was retained by the legislation of Congress, and in 1902 it was reserved by the President.

The question comes up as to what happened between 1900 and 1902. The President reserved it in 1902, I think is the date, at all events after the civil government was formed, but jurisdiction was not reserved before that time by any special act of Congress.

What was the result of the creation of the civil government in 1900? I am relieved from the consideration of the point to a large extent by a previous decision of this court in the case of the United States v. Hernandez, 2 Porto Rico Fed. Rep. 81. Judge Rodey in a very careful opinion reviews all of the cases that have been cited to me. He held in that case that this court had jurisdiction of a crime committed somewhere,— he does not say where,—in this very tract. That would be conclusive if it stood alone. I see no reason after argument to change the conclusion that Judge Rodey has come to upon the authorities then cited. The only doubt is in connection with a case which has arisen since that time. Judge Rodey's decision was in 1906, and since that time has come the Gromer Case. Now does the Gromer Case make a difference? The case of Gromer v. Standard Dredging Co. 224 U. S. 362, 56 L. ed. 801, 32 Sup. Ct. Rep. 499, went up from this court on a question of taxation, and, upon its face, concerns only the

question of taxation. There are, however, in it some suggestions that seem to go beyond taxation. The justice expressing the opinion of the Supreme Court does use some expressions which tend to show that taxation is simply one of the elements of governmental authority and that the United States has not reserved these powers of government, and the inference might be very strong perhaps that this applies also to the question of judicial jurisdiction. The point, however, was not directly before the Supreme Court in that case. Nothing was before it except taxation, and even as to that a very large minority of the court dissented from the opinion.

I cannot say that the point is entirely clear and I am perfectly willing to have it reargued before the end of the case, but it seems to me that there is a very clear distinction between judicial power and taxing power, and the fact that the United States has made a grant to Porto Rico of the power of taxation by the Organic Acts does not necessarily carry with it all judicial jurisdiction. There are so many inconveniences connected with such a theory that I do not think it is to be presumed.

The cases are so fully cited by Judge Rodey that it is not necessary to cite them in detail. I see no reason as at present advised why I should depart from his decision. So the result is that the motion to dismiss for lack of jurisdiction is denied and an exception is allowed.

2. As to expert testimony there is a very interesting point presented. A witness is put on the stand as an expert witness. The difference between an expert and an ordinary witness is that an ordinary witness testifies about facts which he knows by one or more of his five senses. An expert can testify to his

United States v. Lopez.

belief, that is to say, as to what is the fact growing out of certain things that are related to him which he does not himself necessarily know anything about. That is the difference between the two kinds of witnesses. It is obvious, however, that there must be a limit somewhere to expert testimony.

This witness is in effect asked whether what another witness says is credible. He is asked something stronger than that, is it probable, but is it credible is one way of expressing it. Is there anybody whose duty it is and whose power it is to pass upon the credibility of statements of witnesses? Can there be an expert witness to that? A long time ago when courts were first started, among the Anglo Saxons at all events, there was a way of bringing evidence by compurgators where men were brought to swear to the statement of the plaintiff or defendant, and whoever brought the best witnesses would win the case. That is in effect, not in intention, it seems to me what is asked here. If there are any experts as to the credibility of witnesses, it is these twelve men in the box. If they are not experts in this case as to the credibility of witnesses I do not think there are any. I do not think that the jury could appoint a commission to pass upon the credibility of witnesses. Necessarily it would mean that the jury has to adopt a report. But they cannot delegate that sort of power. So I take it that here must be the limit of expert testimony. This man is a doctor, and anything concerning health and any particular form of disease which is in question here he could answer to. The jury would take his testimony for whatever they believe it is worth, but to ask him the credibility of another witness, I think, unless authorities are produced, is going beyond the scope of expert testimony.

It seems to me I will have to sustain that objection.